UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICKY NORRIS,

                              Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of
Social Security,

                              Defendants.

Case No.: 23-cv-00432-TWR-BLM

**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MERITS BRIEF AND AFFIRMING THE DECISION OF THE COMMISSIONER**

**[ECF NO. 11]**

     Plaintiff Ricky Norris brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his application for Title II Social Security Disability Insurance Benefits for lack of disability.  ECF No. 1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 11 ("Mot.")], Defendant's response [ECF No. 16 ("Oppo."), and Plaintiffs' reply [ECF No. 17 ("Reply")].

     This Report and Recommendation is submitted to United States District Judge Todd W. Robinson pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, and the decision of the Commissioner affirmed.

///

23CV432-TWR-BLM

**PROCEDURAL BACKGROUND**

On March 20, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 20, 2020.  See Administrative Record ("AR") at 134.  The claims were denied initially on September 15, 2020, and upon reconsideration on February 1, 2021, resulting in Plaintiff's request for an administrative hearing on February 9, 2021.  Id.

On July 1, 2021, a telephonic hearing was held before Administrative Law Judge ("ALJ") Michael B. Richardson.  Id. at 134, 146.  Plaintiff, who chose to testify and appear without counsel or any other representative, an impartial medical expert, Dr. Darius Ghazi, and an impartial vocational expert ("VE"), John J. Komar, testified at the hearing.  Id. at 134.  In a written decision dated November 16, 2021, ALJ Richardson determined that Plaintiff had not been under a disability, as defined in the Social Security Act.  Id. at 146.  Plaintiff requested review by the Appeals Council.  Id. at 1.  In a letter dated January 17, 2023, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-3.

On March 9, 2023, Plaintiff filed the instant action seeking judicial review by the federal district court.  ECF No. 1.  On June 25, 2023, Plaintiff filed a Motion for Summary Judgment alleging that the ALJ erred in 1) finding that Plaintiff can return to his past relevant work as an Electric Power Superintendent both as actually and generally performed, 2) his evaluation of the medical opinions, and 3) evaluating Plaintiff's subjective symptom testimony by failing to provide clear and convincing reasons for rejecting Plaintiff's statements.  Mot. at 5-22.  Defendant filed a timely response asserting that [s]ubstantial evidence supports the ALJ's step-four finding that Plaintiff could work in his prior occupation as an electric power superintendent as he actually performed the job[,]" "the ALJ reasonably discounted Plaintiff's subjective symptom allegations [,]" "[t]he ALJ's finding that Plaintiff can perform his past relevant work is supported by substantial evidence[,]" and "[t]he ALJ reasonably assessed the medical opinions and PAMF." Oppo. at 6-19.  On September 4, 2023, Plaintiff filed a Reply.  Reply.

///

### ALJ's DECISION

On November 16, 2021, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 146.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since March 20, 2020).  Id. at 137.  At step two, he considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine, status-post C5-C7 discectomy and fusion; osteoarthritis of the knees; obstructive sleep apnea; and cardiomyopathy, status-post stenting (20 CFR 404.1520(c))."  Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  Id. at 138.  At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him to perform light work as defined in 20 CFR 404.1567(b) as follows:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit 6-hours, and stand and/or walk for 4-hours in an 8-hour day, and he needs an assistive device (a cane) for all ambulation; he cannot climb ladders, ropes, or scaffolds, or crawl, stoop, or crouch, but can occasionally climb ramps and stairs and balance; he can occasionally do bilateral reaching; and he must avoid concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery.

Id. at 139.  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence because the medical evidence does not support the alleged loss of functioning."  Id. at 140.  The ALJ further determined that Plaintiff is capable of performing past relevant work as an Electric Power Superintendent.  Id. at 144.

///

**STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), superseded by regulation on other grounds. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record. Id. See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Ahearn, 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Miner, 722 Fed. Appx. at 633.

23CV432-TWR-BLM

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues the ALJ erred in finding that Plaintiff can return to his past relevant work ("PRW") as an Electric Power Superintendent both as actually and generally performed because of the field visits that are required as part of the job and that may include exposure to hazards and dangerous machinery and because of Plaintiff's use of a cane for all ambulation.  Mot. at 7. Plaintiff also argues that the ALJ failed to engage in the required supportability and consistency analysis when evaluating the opinions of Drs. Ghazi and Creek.  Id. at 15.  Finally, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's statements. Id. at 16-22.

Defendant contends that while it is true Plaintiff cannot perform his PRW as generally performed, he can perform his PRW as actually performed.    Oppo. at 6.  Defendant also contends that "the ALJ reasonably discounted Plaintiff's subjective symptom allegations" with the medical evidence and by noting Plaintiff's improvement.  Id. at 10-13.  Finally, Defendant contends that "[t]he ALJ reasonably assessed the medical opinions and PAMF."   Oppo. at 13-19.

Plaintiff replies "that the ALJ's RFC and [Plaintiff's] past work as actually performed as an Electric Power Superintendent is at odds due to the RFC's restriction that 'he must avoid concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery.'"  Reply at 2.  Plaintiff also replies that "[t]he ALJ improperly rejected Dr. Ghazi's testimony based on an incorrect understanding of the requirements to equal a Listing" and did not analyze the supportability and consistency of Dr. Creek's opinion.  Id. at 5-6.  Plaintiff reiterates that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.  Id. at 6-8.

## A.    Past Relevant Work – Electric Power Superintendent

Plaintiff argues the ALJ erred in finding that Plaintiff can return to his PRW as an Electric

23CV432-TWR-BLM

Power Superintendent as generally and actually performed.  Mot. at 7.  Defendant agrees that Plaintiff cannot perform his PRW as generally performed, however, Defendant contends that Plaintiff can perform his PRW as actually performed.   Oppo. at 6.  Plaintiff replies "that the ALJ's RFC and [Plaintiff's] past work as actually performed as an Electric Power Superintendent is at odds due to the RFC's restriction that "he must avoid concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery."  Reply at 2.

　　　1.  Legal standard

　　　At step four of the sequential evaluation process, a claimant bears the burden of showing that she can no longer perform her PRW.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  Ocegueda v. Colvin, 630 Fed. App'x. 676, 677 (9th Cir. 2015) (quoting Pinto, 249 F.3d at 844).  In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to her past job or occupation.  Id. at 677 (citing SSR 82–62, 1982 WL 31386, at *4 (Jan. 1, 1982)).

　　　The ALJ may deny benefits when the claimant can perform the claimant's PRW as "actually performed" or as "generally" performed.  Pinto, 249 F.3d at 845; see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (stating that Plaintiff has the burden of establishing that she cannot "return to [her] former *type* of work and not just to [her] former job.").  "While the claimant is the primary source for vocational documentation, . . . the ALJ may utilize a vocational expert ('VE') to assist in the step-four determination as to whether a claimant is able to perform her past relevant work."  Ocegueda, 630 Fed. App'x. at 677 (citing 20 C.F.R. § 404.1560(b)(2) (providing that, at step four, a VE's testimony "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy[,] . . . may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work").  "There are two sources

6

of information that may be used to define a claimant's PRW as actually performed: a properly completed vocational report; and the claimant's own testimony." Maria C. R. v. Kijakazi, 2022 WL 16556019, at *7 (C.D. Cal., Oct. 31, 2022) (citing SSR 82-61, 1982 WL 31387, at *2, SSR 82-41, 1982 WL 21389, at *4, and Pinto, 249 F.3d at 845).

2. Plaintiff's Testimony

When asked by the ALJ to describe his PRW as a supervisor, Plaintiff testified that he spent his days directing his crew and planning what they needed to do each day for workovers. AR at 182. If a well went down, Plaintiff was responsible for getting it back up and running. Id. Plaintiff was the office employee who coordinated the manpower, equipment, and anything else needed to get the well back in working order. Id. While in the office, Plaintiff "would never be lifting any weight at all." Id. at 183. Plaintiff spent about eighty percent of his time in the office and twenty percent of his time in the field. Id. at 182-183. For field work, Plaintiff would drive himself to the field sites and give advice and instruction as a supervisor. Id. He would stand sometimes, but he never had to lift or carry anything of significance. Id. ("No, I never, no, I never touched anything").

When asked by the ALJ whether he could return to his supervisor job again, Plaintiff testified:

> I believe, I – yeah, I believe I could as long as I could take my lower back shots, that's what I did the whole time, I've been doing back shots for over 20 years, that's one of the reasons why I got into that position and I was fortunately able to without college, it was a very high tech job for me. And that was the – there's a reason I did that back in '95, the doctor told me I gotta start looking forward to not doing the heavy lifting and heavy job my back --.

Id. at 185. In his Work History Report, Plaintiff wrote that in his Power Company job he "was a supervisor and directed a work force of about 37 people [and] mostly did office type work." Id. at 391. Plaintiff stated that the most he ever lifted at work was fifty pounds and that he frequently lifted twenty-five pounds, but also noted that the "only lifting was to move office furniture around when needed." Id.

///

23CV432-TWR-BLM

### 3. VE's Testimony

The VE classified Plaintiff's PRW as an Electric Power Superintendent, DOT 184.167.162. SVP of 8, sedentary exertion.[1] Id. at 187.  When asked by the ALJ if Plaintiff could perform his PRW if he had to avoid concentrated exposure to hazards, unprotected heights, and dangerous moving machinery, the VE responded "Yes, Judge, the person could work as an electric power superintendent as generally or actually performed."  Id.  When the ALJ included the limitation of needing an assistive device, such as a single point cane or cane, the VE responded that Plaintiff could still perform his PRW.  Id. at 188.  The ALJ noted that the DOT[2] does not cover the use of an assistive device and the VE clarified that he was relying on his "professional knowledge and experience."  Id. at 189-190.

### 4. Analysis

Since Plaintiff and Defendant agree that Plaintiff is unable to perform his PRW as generally performed, the Court will only address the ALJ's finding that Plaintiff can perform his PRW as actually performed.  Mot. at 5, 7-9; Oppo. at 6-9; Reply at 2.

---

[1] "TITLE(s): SUPERINTENDENT, ELECTRIC POWER (utilities) alternate titles: manager, public utility, rural Plans and directs activities of major division, district, plant, or department of utility company, or directs particular phase of operation, concerned with production and distribution of electrical power: Interprets company policies and methods and develops specific operating procedures. Delegates functional activities to workers and establishes supervisory schedules to define authority for independent decisions imperative to continuous service to public and safety of workers. Recruits, trains, and supervises workers directly or through subordinate supervisors. Investigates, evaluates, and determines best application of new developments in electric power industry, and devises other means of securing maximum efficiency of personnel and equipment within his jurisdiction. Anticipates and forecasts power consumption and economic trends, prepares budget recommendations, and makes related decisions in order to keep facilities and system operation concurrent with economic changes. Cooperates with other SUPERINTENDENTS, ELECTRIC POWER (utilities) in solving interrelated administrative, organizational, and technical problems. Directs maintenance of property records and upkeep of equipment and structures. Is usually required to possess an electrical or mechanical engineering background, extensive familiarity with electric power systems, and experience directly related to particular phase of electrical activity superintended.  GOE: 05.02.01 STRENGTH: S GED: R5 M5 L5 SVP: 8 DLU: 77."  Available at https://occupationalinfo.org/18/184167162.html.

[2] DOT refers to the Dictionary of Occupational Titles.

23CV432-TWR-BLM

"There are two sources of information that may be used to define a claimant's PRW as actually performed: a properly completed vocational report[3]; and the claimant's own testimony." Maria C. R., 2022 WL 16556019, at *7 (citing SSR 82-41, 1982 WL 21389, at *4, and Pinto, 249 F.3d at 845).  As an initial matter, Plaintiff himself testified that he could return to his past work as an Electric Power Superintendent as long as he continued his back injections.  AR at 185. That is substantial evidence in support of the ALJ's finding that Plaintiff could return to his PRW. Additionally, Plaintiff clearly testified that he spent eighty percent of his time as a supervisor in the office and twenty percent of his time in the field advising employees on how to make necessary repairs.  Id. at 182-183.  Neither Plaintiff's oral testimony nor his Work History Report described Plaintiff's job, whether in the office or on the field, as involving concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery.

Plaintiff argues that driving to the field sites requires him to be around dangerous machinery which conflicts with his RFC.  Mot. at 7.  Plaintiff does not cite to any statues, case law or other resources in support of his position.  Id.  The Court disagrees with this position and does not find that driving to and from the work site requires Plaintiff to be around dangerous machinery in the context of his RFC.  See Meneses v. Berryhill, 2017 WL 598759, at *10 (C.D. Cal., Feb. 14, 2017) ("Plaintiff has not shown that driving a vehicle—which admittedly has moving parts—even one requiring special training and/or skills, is equivalent to an occupation involving 'dangerous machinery.' Thus, no conflict existed between the DOT and plaintiff's RFC limitation to no dangerous machinery.").

Plaintiff argues that it is unclear how Plaintiff can perform the lifting portion of his PRW while ambulating with a cane as both hands would be needed to carry anything over twenty

---

[3] While the VE testified about Plaintiff and his PWR, there does not appear to be a SSA-3369-F6 Vocational Report in the AR. See Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation As Generally Performed (S.S.A. 1982) SSR 82-61 ("A properly completed SSA-3369-F6, Vocational Report, may be sufficient to furnish information about past work. There may be cases involving significant variations between a claimant's description and the description shown in the DOT. In some instances, an apparent variation may result from an incomplete or inaccurate description of past work. Employer contact or further contact with the claimant, may be necessary to resolve such a conflict.").

23CV432-TWR-BLM

pounds.  Mot. at 7.  In his Work History Report, Plaintiff checked a box indicating that he frequently lifted twenty-five pounds while performing his PRW and another box indicating that the heaviest weight he lifted while working was fifty pounds.  AR at 391.  However, in the same report, on the same page, he wrote that his "only lifting was to move office furniture around when needed."  Id.  Plaintiff also testified that while he was in the office, he "would never be lifting any weight at all" and that in the field he "never touched anything."  Id. at 183.  The ALJ is permitted to consider internal contradictions in Plaintiff's testimony.  Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  The VE testified that based on his professional knowledge and experience and Plaintiff's testimony, Plaintiff could perform his PRW while using a cane.  Id. at 188.  Plaintiff's description of his PRW as actually performed combined with the VE's testimony is substantial evidence in support of the ALJ's finding that Plaintiff could perform his PRW in accordance with his RFC.  Additionally, while Plaintiff argues that the evidence should be construed in favor of his arguments, where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).

Plaintiff's RFC requires him to "avoid concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery."  AR at 139.  Accordingly, Plaintiff argues that he cannot perform his PRW while in the field.  Mot. at 7; Reply at 2.

> A supplement to the Dictionary defines 'hazards' to include 'moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals.' This definition was also adopted by Social Security Ruling 96-9P. And courts routinely rely on this definition in Social Security cases analyzing 'hazards.'

Barry H. v. Saul, 2021 WL 1174774, at *2 (S.D. Cal., Mar. 29, 2021) (internal citations omitted).

Concentrated exposure is not a term that is defined in the regulations or DOT.  See Daniel S. v. Berryhill, 2019 WL 1903384, at *9 (C.D. Cal., Apr. 26, 2019).  However, several cases have found that avoiding concentrated exposure does not mean avoiding all exposure.  See Patton v. Colvin, 2013 WL 6018059, at *6 (C.D. Cal., Nov. 12, 2013) ("The ALJ precluded plaintiff from "concentrated" exposure to pulmonary irritants, but did not preclude her from moderate

23CV432-TWR-BLM

exposure or any exposure. Because the DOT states that electronics assembler workers are exposed to such chemicals occasionally, rather than frequently or constantly, there is no apparent conflict between the vocational expert's testimony and the DOT in this regard); see also Parr v. Kijakazi, 2023 WL 2720814, at *12 (M.D. Ala., Mar. 30, 2023) ("[a]voiding concentrated exposure is not the same as avoiding all exposure.  Further, avoiding concentrated exposure is less limiting than being restricted to occasional exposure to extreme heat, extreme cold, humidity, and fumes/gases") (citing Hamadi v. Kijakazi, 2021 WL 3772181, at *3 (D.N.M. Aug. 25, 2021) (adopting Commissioner's position that the ALJ's RFC using the word "occasional" was more restrictive than the agency's doctors' opinions using "avoid concentrated exposure," not less:"); Bernier v. Saul, 2019 WL 5296846, at *7-8 (D. Conn. Oct. 18, 2019) ("avoid concentrated exposure" is the "least restrictive limitation," unlike "occasional" exposure, and an RFC to "avoid concentrated exposure" is compatible with performing jobs that require "frequent" environmental exposure); Young v. Berryhill, 2017 WL 6352756, at *6 (N.D.W. Va. Dec. 13, 2017) ("concentrated exposure means more than occasional exposure," therefore job involving occasional (very little to 1/3 of the day) exposure to extreme heat was not precluded by someone who must avoid concentrated exposure) accord Thomas v. Kijakazi, 2022 WL 897542, at *3 (M.D. Fla. Mar. 28, 2022)).

Plaintiff himself notes that "[i]t is unclear whether there are unprotected heights at the site of the power-generating geo-thermal wells" and here, neither Plaintiff's testimony nor the DOT description[4], suggests that the portion of Plaintiff's PRW that took place in the fields would

---

[4] The DOT summary states:
    Moving Mech. Parts: Not Present - Activity or condition does not exist
    Electric Shock: Not Present - Activity or condition does not exist
    High Exposed Places: Not Present - Activity or condition does not exist
    Radiation: Not Present - Activity or condition does not exist
    Explosives: Not Present - Activity or condition does not exist
    Toxic Caustic Chem.: Not Present - Activity or condition does not exist
    Other Env. Cond.: Not Present - Activity or condition does not exist
184.167-162 Superintendent, Electric Power, DICOT 184.167-162 (G.P.O.), 1991 WL 671246.

23CV432-TWR-BLM

require him to face concentrated exposure to "hazards such as work at unprotected heights and around dangerous moving machinery."  Mot. at 7.  Plaintiff testified that he gave advice and instruction when on field assignments.  AR at 182-183.  He made no mention of performing work on or near the equipment or conducting repairs.  Id.

In his reply, Plaintiff argues that "[a]n integral and expected part of an electric power superintendent job is working with and around power-generating equipment."  Reply at 2.  While that may be true to an extent, the DOT description of an electric power superintendent notes planning and directing activities, interpreting policies, developing procedures, delegating functional activities, establishing schedules, recruiting, training, supervising, investigating, evaluating, anticipating, forecasting, and preparing budgets.[5]  Accordingly, it is not obvious or clear that an integral part of the supervisory position involves working with or around power generating equipment.  None of the tasks listed above require obvious proximity to power generating equipment.  This is supported by Plaintiff's own testimony that he "mostly did office type work" and spent most of his time in the field giving advice and instruction.  AR at 183, 391.

For the reasons set forth above, the Court finds there is substantial evidence supporting the ALJ's decision and that the ALJ did not err in finding Plaintiff could perform his PRW as actually performed.

### B.   Medical Opinion Assessment

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Drs. Ghazi and Creek because the ALJ failed to engage in the required supportability and consistency analysis for both doctors.  Mot. at 9-16. Plaintiff also alleges the ALJ erred when he found Dr. Ghazi's opinion less persuasive because Dr. Ghazi was "unable to provide a persuasive analysis for [his] opinion" which Plaintiff argues is the ALJ's job, not the job of a medical source.  Id. at 12.  Next, Plaintiff alleges the ALJ erred by failing to credit Dr. Ghazi's testimony that Plaintiff equaled the criteria of Listing 1.15.  Id. at 14.  Finally, Plaintiff argues that the ALJ improperly focused his analysis on the portion of Dr. Creek's opinion regarding whether Plaintiff would be able to find work and

---

[5] See https://occupationalinfo.org/18/184167162.html.

1   failed to specify the evidence and opinions that were inconsistent with Dr. Creek's opinions.  Id.

2   at 15-16.

3          Defendant contends that the ALJ reasonably assessed the medical opinions of Drs. Ghazi

4   and Creek.   Oppo. at 13.   Defendant notes that the ALJ discussed the supportability of Dr.

5   Ghazi's opinion that Plaintiff's impairments equaled a listing and found the opinion to not be

6   persuasive and highlighted the fact that Dr. Ghazi did not provide support for his position.  Id.

7   at 14-15.  Defendant contends that Plaintiff "is grossly mistaken" that he need not satisfy all the

8   Listing criteria to equal a Listing.   Id. at 16.   Defendant also contends that the ALJ properly

9   considered Dr. Creek's opinion by noting that the opinion contradicted Plaintiffs own testimony,

10  was inconsistent with evidence and other opinions, and that Dr. Creek's opinion about Plaintiff's

11  difficulty finding work was not an appropriate factor to consider in a disability determination.

12  Id. at 18.

13         Plaintiff reiterates that the ALJ improperly rejected Dr. Ghazi's testimony due to the ALJ's

14  incorrect understanding of the requirements to equal Listing 1.15.  Reply at 3-5.  Plaintiff further

15  argues that the ALJ was required to analyze the supportability and consistency of Dr. Creek's

16  opinion which he failed to do and that merely stating that Dr. Creek's opinion was inconsistent

17  with Plaintiff's statements and that Dr. Creek's opinion regarding Plaintiff's disability is one

18  reserved for the Commissioner was insufficient.  Id. at 6.

19         1.      Legal Standard

20         Changes to Social Security Administration regulations have shifted the hierarchical value

21  of medical opinions in evaluating presumptive weight.  See Woods v. Kijakazi, 32 F.4th 785, 787

22  (9th Cir. 2022). Prior to the changes in 2017, the opinion of a treating doctor generally was

23  given more weight than opinions of doctors who did not treat the claimant.   See Turner v.

24  Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821,

25  830-31 (9th Cir. 1995)).  Following the Administration's changes on March 27, 2017, "a medical

26  source's relationship with the claimant is still relevant when assessing the persuasiveness of the

27  source's opinion[,]" but the most important factors the agency considers when weighing medical

28  opinions are "supportability and consistency."   Woods, 32 F.4th at 791-792.   "Supportability

means the extent to which a medical source supports the medical opinion by explaining the relevant [ ] objective medical evidence. Consistency means the extent to which a medical opinion is consistent [ ] with the evidence from other medical sources and nonmedical sources in the claim." Id. (internal citations and quotations omitted).  Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence," meaning that the ALJ must articulate how persuasive they find all provided medical opinions and explain the supportability and consistency factors of those opinions.  Id. at 792; see also P.H. v. Saul, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citation omitted); and Carolyn M.D. v. Kijakazi, 2021 WL 6135322, at *5 (C.D. Cal. Dec. 28, 2021) ("As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.").  Other factors that may be relevant and considered include "relationship with the claimant, specialization, and 'other factors that tend to support or contradict a medical opinion or prior administrative medical finding' including but not limited to 'evidence showing a medical source has familiarity with other evidence in the claim or understanding our disability program's policies and evidentiary requirements." Samuel M., 2022 WL 884912, *4.

      2. Dr. Ghazi

Dr. Ghazi, an independent Medical Expert, testified at Plaintiff's hearing as follows:

This gentleman who is 61-years of age at this time, suffering from low life (sic) pain of a chronic stage, and he demonstrates multi-level lumbar disc degeneration, but no stenosis and this is referring to as spondylosis in our field. He demonstrates L2, L3, L4 as one impairment of the lumbar disc. In addition to that he has cervical fusion early on, I don't exactly know what the date of this procedure was. But he has a procedure we refer to as a CDF, which is anterior cervical disc and fusion, which has been pretty much successful and yielded good results. And in addition to that studies have shown that he has several [INAUDIBLE] arthropathy in his

23CV432-TWR-BLM

lumbar spine and the lumbar radiculopathy, although the chance of disc disease of the spine is possibly the moderate not more severe [phonetic]. Until another examiner showed that in 2020, the degenerative disc disease stood out as his main problem for this gentleman in addition to bilateral knee pain and the sciatica. And some of these changes are obviously age appropriate for the gentleman of his age and the level of arthritis in his knees are just that. Age appropriate. And you mentioned the use of a cane since his MDA 1978 intermittently for walking. He demonstrates no obvious neurological synthesis through his lower extremities, and he has a radiation of the pain to the lower extremities without demonstrating any reflex or sensory changes. So, overall, his problems consist of multiple joint pain, particularly his knees and his low back and for that reason I believe this equals the new listing of 1.15 in my opinion.

Id. at 174-175.  When pressed by the ALJ to explain his statement, which the ALJ stated "did not flow logically[,]" Dr. Ghazi explained that he believed Plaintiff "fits into the listing of 1.15 – equaling this" because of Plaintiff's lumbar tissue degenerative disc disease, radiation of pain to the lower extremities, and positive signs of radiculopathy involving the nerve root.  Id. at 176. Dr. Ghazi also testified that he believed Plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, sit for six hours, stand and walk for four hours with appropriate breaks, occasionally bend or stoop, and use his upper extremities without limitation but should avoid climbing ladders and unprotected heights.  Id.  Dr. Ghazi admitted that Plaintiff did not meet Listing 1.15 because subparagraph D was not satisfied and confirmed that Plaintiff's use of a cane was a personal choice and not a prescribed treatment.  Id. at 177.

The ALJ found that Dr. Ghazi's opinion that Plaintiff equaled Listing 1.15 was not persuasive but found that his opinions regarding Plaintiff's limitations were persuasive.  AR at 142-143.  Plaintiff only challenges the ALJ's evaluation of Dr. Ghazi's opinion as to Listing 1.15. Mot. at 11-15.

In his step three analysis, the ALJ stated that Plaintiff did not "meet or medically equal" Listings 1.15 and 1.18.  AR at 138.  The ALJ recited the elements of Listings 1.15 and 1.18 and then concluded that Plaintiff did meet or medically equal the final element of the Listings because "there's no evidence for the need for a mobility device requiring the use of both hands or the

23CV432-TWR-BLM

inability to use one or both upper extremities (Listings 1.15D & 1.18D)."[6]  Id. at 139. In his subsequent RFC determination, the ALJ included the restriction that Plaintiff "needs an assistive device (a cane) for all ambulation."  Id.

Plaintiff acknowledges that he does not meet the requirements of Listing 1.15D but argues at length that he equals the Listing because the regulations permit a finding of equivalence to a Listing, even if the claimant does not exhibit one of the criteria of the Listing or the claimant's symptoms are not as severe as stated in the Listing.  Mot. at 12-15 and Reply at 3-5 (citing and analyzing 20 C.F.R. § 404.1526).  Defendant asserts that Plaintiff is incorrect in his equivalence argument but fails to address 20 C.F.R. § 404.1526, which defines medical equivalence.  Oppo. at 16-17.  Section 404.1526 provides three ways to find medical equivalence, including in a situation where the claimant does not exhibit one or more of the specified findings or where the claimant exhibits all findings but not as severely as stated in the Listing.  20 C.F.R. § 404.1526(b)(1)(i).  In such a situation, an impairment can be medically equivalent if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria."  Id. at 404.1526(b)(1)(ii).

"To prove equivalence, a claimant must offer a "theory" as to how impairments equal a listing, identifying specific medical evidence in the record." Ceneen L. B., v. Kijakazi, Acting Commissioner of Social Security, 2021 WL 4948854, at *5 (C.D. Cal., Oct. 25, 2021, No. CV 20-7089-MCS(E)) (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)).  "'A claimant cannot

---

[6] Listing 1.15 has four elements and the final one, 1.15D, requires "Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:  1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4)."

23CV432-TWR-BLM

qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] ... impairments is as severe as that of a listed impairment.' The reason for this is clear. Listed impairments are purposefully set at a high level of severity because 'the listings were designated to operate as a presumption of disability that makes further inquiry unnecessary.'" Ceneen L. B., 2021 WL 4948854, at *5 (quoting Kennedy v. Colvin, 738 F.3d at 1176 (quoting Sullivan v. Zebley, 493 U.S. 521, 530–31 (1990)) (noting, "Since Zebley, we have followed this approach, requiring claimants to equal each criterion of [a listing] rather than relying on overall functional impact.")).  "A generalized assertion of functional problems is not enough to establish disability at step three." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

Plaintiff does not articulate a theory supported by specific evidence that Plaintiff's impairments medically equal Listing 1.15D. See Mot. at 12-15; Reply at 3-5.  Rather, Plaintiff argues that Plaintiff's medical problems, including the impairments set forth in subsections A-C of Listing 1.15, are severe and therefore equal to Listing 1.15. Id.  Plaintiff identifies Dr. Ghazi's opinion and a variety of medical records to support his position but neither the medical records nor Dr. Ghazi's opinion support a finding that Plaintiff's medical impairments medically equal the requirements of subsection D.  Id.  This generalized assertion of severe functional problems is insufficient. See Tackett, 180 F.3d at 1100; Ceneen L. B., 2021 WL 4948854, at *5; and Zebley, 493 U.S. at 531-32.

Plaintiff also argues that the ALJ erred in rejecting Dr. Ghazi's equivalence opinion because he failed to adequately discuss the supportability and consistency of that opinion.  Mot. at 11-15.  In explaining his equivalence decision, the ALJ stated,

> Dr. Ghazi initially opined the claimant medically equals Listing 1.15. However, upon exploring the requirements of the listing further, and when asked to explain this opinion, Dr. Ghazi noted the claimant does not need a cane as it is more for personal comfort than medical necessity, and this is inconsistent with the listing requirements.  . . .  The initial opinion as to equaling a Listing is not persuasive. First, the fact that the claimant does not need any assistive device, other than a cane for comfort, clearly does not support a finding of meeting or equaling Listing

23CV432-TWR-BLM

1.15, as part D of 1.15 requires the need for a mobility device involving the use of both hands and/or the inability to use one or both upper extremities. Dr. Ghazi has not cited sufficient evidence that the claimant's symptoms would be medically equivalent to the severity of part D (20 CFR 404.1526). The undersigned notes that Dr. Ghazi did not appear to have ready access to a copy of the listings available to him during his testimony, and when asked about the specific rationale for "equaling a listing", he was unable to provide a persuasive analysis for this initial opinion.

Id. at 142.

While the ALJ did not carefully articulate and separate his specific findings regarding supportability and consistency, it is clear that he conducted the required analysis and that there is substantial evidence supporting his conclusion. The disputed element of Listing 1.15 requires in relevant part that the claimant have a documented medical need for a walker or bilateral canes. The ALJ found that Plaintiff did not have a documented medical need for the required device and did not actually use the required device; rather, Plaintiff uses a single cane because he appreciates the extra stability or comfort. AR at 142.

With respect to supportability, the ALJ found that Dr. Ghazi's opinion that Plaintiff equaled the requirements of Listing 1.15 was not supported because the medical evidence showed and Dr. Ghazi confirmed that Plaintiff did not "need any assistive device, other than a cane for comfort." Id. at 142. The ALJ also noted that Dr. Ghazi was unable to provide medical support for his conclusion that Plaintiff equaled the requirements of Listing 1.15D. Id. Plaintiff argues that the ALJ improperly required Dr. Ghazi to conduct the persuasive analysis test. Mot. at 12. The Court disagrees and finds that the ALJ's language, taken in context, indicates that the ALJ found that Dr. Ghazi was unable to provide facts or medical evidence to support his argument that Plaintiff's use of a single cane for comfort medically equaled Listing 1.15D's requirements.

Similarly, with respect to consistency, the ALJ stated that Dr. Ghazi's finding that Plaintiff uses a single cane for personal comfort – not due to medical necessity and not bilaterally -- was inconsistent with the Listing requirements. Id. Because the ALJ did not discount Dr. Ghazi's opinion because it was inconsistent with other medical source evidence, but because it was

23CV432-TWR-BLM

inconsistent with the requirements of Listing 1.15, the ALJ did not need to address whether Dr. Ghazi's equivalency opinion was consistent with the equivalency opinions of other doctors.[7]  The Court notes that Plaintiff has not identified any other doctors who opined on whether Plaintiff's symptoms equaled Listing 1.15 and has not identified any evidence or other medical opinion supporting his argument that there are "other findings related to [his] impairment that are at least of equal medical significance to the required criteria."  There simply is no evidence indicating that Plaintiff had a medical necessity for one of the devices described in Listing 1.15D, that he in fact used one of the identified devices, or that there are other findings of equal medical significance to those requirements.

Finally, the ALJ noted that another reason for discounting Dr. Ghazi's opinion was that he did not have "ready access" to the relevant Listings and was unable to articulate a factual basis to support his opinion that the Plaintiff equals Listing 1.15.  See Samuel M., 2022 WL 884912, *4 (proper considerations include whether the doctor shows a "familiarity with other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  As set forth in the above quote and in the transcript of the hearing, Dr. Ghazi's testimony was confusing, disjointed, and lacked support. See AR at 174-175.

Because the ALJ properly evaluated the persuasiveness of Dr. Ghazi's opinion and there is substantial evidence supporting the ALJ's finding, the Court finds the ALJ did not err in rejecting Dr. Ghazi's opinion that Plaintiff equaled Listing 1.15.  See 20 C.F.R. §§ 404.1520c(b)(2), 404.1526, and 416.920c(b)(2).

2.    Dr. Creek

Dr. Creek treated Plaintiff from 2015 to 2017 for chronic low back pain with painful limited range of motion of the lumbar spine.  Id. at 853.  On August 2, 2021, Dr. Creek wrote a letter

---

[7] The Court notes that with regard to Dr. Ghazi's opinions regarding Plaintiff's limitations, the ALJ discussed the opinions of other medical providers, discussed the supportability and consistency of Dr. Ghazi's opinions, and explained why he chose the identified RFC.  AR at 142-144.

23CV432-TWR-BLM

where he compared an MRI of Plaintiff's spine from May 26, 2017 with an MRI of Plaintiff's spine from April 6, 2019.  Id. at 854.  Dr. Creek stated that he believed Plaintiff's medical condition was worsening and that Plaintiff's activities of daily living contributed to the worsening.  Id. at 855.  Dr. Creek concluded that Plaintiff's age and medical condition would make it difficult for him to find employment and work and that he should remain disabled.  Id.  Dr. Creek specifically noted that Plaintiff would have a difficult time lifting more than ten pounds, pushing, pulling, and standing for long periods of time in one position.  Id.

The ALJ found that Dr. Creek's opinion was not persuasive.  AR at 143.  The ALJ explained:

> This opinion is not persuasive. First, it is inconsistent with the claimant's own subjective complaints. The claimant admits he can lift up to 20 pounds (Exh. B8E, at pg. 2). Next, whether the claimant can find work is not a factor in determining disability.  Rather, the undersigned must determine whether the claimant is able to perform his past relevant work (20 CFR 404.1520(f)) or do any other work considering his residual functional capacity, age, education, and work experience (20 CFR 404.1520(g)). Lastly, a finding on whether the claimant is disabled is an issued [sic] reserved to the Commissioner; therefore, Dr. Creek is not competent to opine the same according to our rules (20 CFR 1520b(c)(3)). This opinion is also in consistent [sic] with the remainder of the evidence and other opinions.

Id. at 143-144.  Before and after this analysis, the ALJ discussed the other medical evidence and opinions.  Id. at 141-142, 144.

The ALJ adequately considered the consistency factor when evaluating the persuasiveness of Dr. Creek's opinions.  The ALJ found that Dr. Creek's opinions were inconsistent with Plaintiff's subjective statements because Dr. Creek opined that Plaintiff was precluded from lifting more than ten pounds, but Plaintiff himself started that he could lift up to twenty pounds.  Id. at 143 (citing AR at 418).  The ALJ also found that Dr. Creek's opinion that Plaintiff should remain disabled was inconsistent "with the remainder of the evidence and other opinions."  Id. at 144.  The ALJ's findings regarding the consistency of Dr. Creek's opinions immediately followed his evaluation of the opinions of five other medical sources.  Id. at 142-143.   None of those five doctors found that it would be very difficult for Plaintiff to lift more than ten pounds.  Id.  Specifically, Drs. Ghazi, Kanner, and Sin opined that Plaintiff could

23CV432-TWR-BLM

occasionally lift twenty pounds and frequently lift ten pounds, Dr. Abitol opined that Plaintiff could lift no more than twenty pounds, and Dr. Eves opined that Plaintiff could lift no more than fifteen pounds.  Id.

The ALJ also properly addressed the supportability factor.  Id. at 143-144.  The ALJ noted that Dr. Creek's finding regarding the difficulty Plaintiff would encounter in obtaining new employment was not persuasive.  Id. at 143-144.  While the ALJ did not use the word supported, he followed the statement by actually explaining how the finding was not supported.  Id.  Specifically, because a claimant's ability to find work is not an appropriate factor for Dr. Creek to consider in forming his conclusion that Plaintiff is disabled and should remain that way, it cannot support his conclusion that Plaintiff is unable to work.  The ALJ also noted that Dr. Creek's opinion was unpersuasive because his determination that Plaintiff was disabled is one that is reserved for the Commissioner.  Id. at 144.  Dr. Creek's determination was not properly supported because it is not a medical conclusion and "therefore, Dr. Creek is not competent to opine" on it.  This is an appropriate factor for the ALJ to consider in finding Dr. Creek's opinion to be unpersuasive.  See Hensley v. Kijakazi, 2023 WL 4700635, at *1 (9th Cir., July 24, 2023) ("the ALJ was not even required to consider this opinion because it gave an ultimate conclusion of disability instead of objectively describing an impairment's severity.") (citing § 20 C.F.R. 404.1527(d)(1)–(2) (noting that "[a] statement by a medical source that you are 'disabled' or 'unable to work'" is not a medical opinion and is instead a determination "reserved to the Commissioner") and McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner.")); see also Irene C. v. Comm'r of Soc. Sec., 2023 WL 2090978, at *9 (E.D. Wash., Feb. 17, 2023) (finding the ALJ did not err where he discounted a nurse's opinion that plaintiff was unable to perform any type of work because "the ultimate issue of disability is reserved to the Commissioner" and the opinion did not provide any insight into any specific limitations) (citing 20 C.F.R. § 4.04.1527(d)) (noting that the ultimate issue of disability is reserved for the Commissioner, and opinions on that issue are not considered medical opinions, nor are they given any special significance).

Because the ALJ properly considered the supportability and consistency factors in

23CV432-TWR-BLM

1    evaluating the persuasiveness of Dr. Creek's opinion and there is substantial evidence in the

2    record supporting the ALJ's decision, the Court finds that the ALJ did not err.  See 20 C.F.R. §§

3    404.1520c(b)(2), 416.920c(b)(2).

4    **C.    Subjective Symptom Testimony**

5           Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting

6    his subjective symptom testimony.    Mot. at 16.    Specifically, Plaintiff claims the ALJ

7    mischaracterized the medical records and Plaintiff's improvement.  Id. at 20-22.  Defendant

8    contends that the ALJ reasonably discounted Plaintiff's subjective symptom allegations.  Oppo.

9    at 10.  Plaintiff replies that the ALJ improperly rejected his testimony and notes that "while

10   effective treatment can undermine a claimant's statements, here, the ALJ erred by focusing only

11   on treatment that was ineffective in the long term."  Reply at 8.

12           1.    Relevant Law

13          The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

14   symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ

15   must determine whether the claimant has presented objective medical evidence of an underlying

16   impairment which could reasonably be expected to produce the pain or other symptoms

17   alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not

18   prove that the impairment reasonably could be expected to produce the alleged degree of pain

19   or other symptoms; the claimant need only prove that the impairment reasonably could be

20   expected to produce some degree of pain or other symptom.  Id.  If the claimant satisfies the

21   first element and there is no evidence of malingering, then the ALJ "can [only] reject the

22   claimant's testimony about the severity of her symptoms . . . by offering specific, clear and

23   convincing reasons for doing so." Id. (internal quotation marks and citation omitted).  "General

24   findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

25   evidence undermines the claimant's complaints."    Reddick, 157 F.3d at 722 (quoting

26   Lester, 81 F.3d at 834).  The ALJ's findings must be "sufficiently specific to permit the court to

27   conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart,

28   278 F.3d 947, 958 (9th Cir. 2002).

23CV432-TWR-BLM

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains.  Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision.  See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

As an initial matter, neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine, status-post C5-C7 discectomy and fusion; osteoarthritis of the knees; obstructive sleep apnea; and cardiomyopathy, status-post stenting (20 CFR 404.1520(c))."  AR at 137.  Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  Id. at 140; see also Lingenfelter, 504 F.3d at 1036; Mot., Oppo. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering.  See Mot.; Oppo.  As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.  See Lingenfelter, 504 F.3d at 1036.

The ALJ identified three reasons for discounting Plaintiff's subjective claims, two of which were addressed by the parties.  The Court will consider each reason individually.

///

///

23CV432-TWR-BLM

2.    <u>Inconsistent Testimony</u>

The first reason provided by the ALJ is that Plaintiff's testimony was internally inconsistent.  AR at 141.  The ALJ summarized Plaintiff's subjective symptoms, his belief that the treatment he has received has not worked, and that he is unable to work due to "back, neck, and knee pain, as well as heart issues."  <u>Id.</u> at 140.  The ALJ then noted that Plaintiff also "testified that he believes he **could** continue to do the job with continued pain relief injections; however, his job now requires a college degree which he does not have, and he does not think he would be able to pass a company physical."  <u>Id.</u> (emphasis in original). The ALJ concludes that Plaintiff's inconsistency regarding his symptoms and capabilities/limitations undercut his credibility regarding the severity of his limitations.  <u>Id.</u>

While Plaintiff quotes the ALJ's finding, Plaintiff does not challenge the validity of this reason to discount Plaintiff's credibility regarding the degree of his symptoms and the extent of his limitations.  Mot. at 18.  The Ninth Circuit has held that Plaintiff's inconsistent testimony is a legitimate reason to discount Plaintiff's subjective claims.  <u>See</u> <u>Light</u>, 119 F.3d at 792 ("[t]o find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony).  Here, the record supports the ALJ's finding as Plaintiff clearly testified that he believed he was capable of performing his prior job.  AR at 185.  Accordingly, this is a clear and convincing reason to discount Plaintiff's subjective claims.  <u>See</u> <u>Lachner v. Kijakazi</u>, 2023 WL 8699011, at *8 (E.D. Cal., Dec. 15, 2023) ("The ALJ discounted Plaintiff's subjective complaints based on inconsistent statements made at the hearing and in prior statements. General inconsistent statements—even those unrelated to the claimant's symptoms—can provide a permissible basis to discredit a claimant's lay testimony.") (citing <u>Thomas</u>, 278 F.3d at 958-59) (inconsistencies in a claimant's testimony may be used to discredit subjective complaints).

///

///

///

23CV432-TWR-BLM

### 3. Objective Medical Evidence

Next, the ALJ found that "[Plaintiff]'s allegations regarding the severity of his symptoms and limitations [were] diminished because those allegations [we]re greater than expected in light of the objective evidence of record." AR at 141.

The Ninth Circuit recently revisited the law governing how ALJs may consider objective medical evidence and inconsistent statements. Smartt v. Kijakazi, 53 F.4th 489, 496 (9th Cir. 2022). In Smartt, among other arguments, the plaintiff appealed her denial of Social Security disability insurance benefits on the grounds that the ALJ erred in discounting her subjective pain testimony and self-reported limitations. Id. at 496-97. The plaintiff relied on Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) and correctly argued that an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain." Smartt, 53 F.4th at 498 (quoting Burch, 400 F.3d at 680) (emphasis in original). However, the court in Smartt clarified that "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 54 F.4th at 498 (emphasis in original). The court held that prior Ninth Circuit decisions make clear that "an ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to' the Social Security Act" and contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. Id. at 499.

Inconsistencies with the objective medical evidence cannot be the sole reason provided by an ALJ for discounting a Plaintiff's credibility. "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of ... testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'" Ondracek v. Comm'r of Soc. Sec., 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting Burch, 400 F.3d at 680); see also Rollins v. Massanari, 261 F.3d at 857 (9th Cir. 2001), (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); and SSR 16–3p (S.S.A. Oct. 25, 2017) (stating

that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

Here, the ALJ acknowledged that Plaintiff's "physical impairments caused functional limitations" but found they were not disabling.  AR at 140.  The ALJ then discussed in detail Plaintiff's medical treatment related to Plaintiff's neck, back, and knee and concluded that the records support the "postural and reaching limitations" set forth in the RFC.  Id. at 140-141.  The ALJ also discussed in detail Plaintiff's cardiac care and determined that it "supports the exertional limitations" in the RFC.  Id. at 141.  The ALJ then identified objective medical evidence that he believed did not justify restrictions beyond those set forth in the RFC.  Id. at 141-142.  Specifically, the ALJ noted Plaintiff's (1) 60% pain relief for three weeks while his ability to walk improved, (2) March 30, 2020 medical report noting that Plaintiff's branch block injections improved his pain 50% and Plaintiff rated his pain at a 3/10 in severity, (3) January 11, 2021 medical report where Plaintiff stated that the branch blocks provided great relief and despite a decreased range of motion, Plaintiff had normal sensation, reflexes, motor strength, and muscle tone, (4)  October 13, 2020 report where despite reporting pain radiating down his back, Plaintiff reported that occipital nerve block injections reduced his pain by 80%, and (5) May 25, 2021 report where Plaintiff reported that his neck pain was much improved and he had near normal range of motion.  Id. at 141 (citing Exh. B10F at 11, 16, 49, 70; B12F at 17-18; and B16F).  The ALJ found that these records specifically "detract[ed] from the alleged severity of [Plaintiff's] cervical and lumbar impairments."  Id. at 141.

The ALJ also noted Plaintiff's (1) October 21, 2020 medical report where Plaintiff reported 20% improvement with injections and provided a 5/10 pain rating, (2) November 11, 2020 report where Plaintiff reported a 40% pain improvement and reported a pain severity level of 3/10, (3) December 16, 2020 report where knee injections showed a 20% improvement in pain and pain was rated at a 3/10 in severity, (4) March 26, 2021 report where Plaintiff reported his knee pain as a 4/10 in severity, and (5) May 19, 2021 record where Plaintiff reported improvement with walking and driving after undergoing physical therapy for knee pain.  Id. at

142 (citing Exh. B9F at 5, 11; B14F at 5; B15F at 3; and B20F at 1).  The ALJ found that these records specifically "contravene[ed] [Plaintiff's] alleged loss of functionality." Id. at 142.

Finally, the ALJ identified Plaintiff's (1) March 23, 2020  ECG results showing improved ejection fraction of 61.27% status post stenting, (2) November 5, 2020 record from a cardiovascular medical appointment where Plaintiff denied chest pain, shortness of breath, orthopnea, palpitation, syncope, paroxysmal nocturnal dyspnea, or resting leg pain, (3) December 14, 2020 normal arterial duplex scan of the bilateral lower extremities, and (4) December 15, 2020 medical report showing carotid artery stenosis improvement to less than 50% making it fall into the "mild" category. Id. at 142 (citing Exh. B8F at 7 and B13F at 1, 8, 11).  The ALJ found these records to be "inconsistent with *disabling* cardiovascular impairments or sleep apnea." Id. at 142 (emphasis added).

Plaintiff argues that the ALJ mischaracterized or misinterpreted the records.  Mot. at 19-22 (arguing Plaintiff "has not experienced the sort of stability and control that the ALJ concluded he had[,]" the ALJ "mischaracterized the record regarding [Plaintiff's] improvement with physical therapy[,]" and providing an alternative interpretation of the cardiac records). The Court has reviewed the medical records cited by the ALJ and finds they constitute substantial evidence supporting the ALJ's decision to discount Plaintiff's subjective claims.  The Court also has reviewed the medical records identified by the Plaintiff and notes, as discussed in the next section, that many of them predate the alleged disability onset date and finds that the remaining records do not negate the substantial evidence supporting the ALJ's decision. Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Ahearn, 988 F.3d at 1115 (citing Mayes, 276 F.3d at 459).   In addition, the Court notes that while Plaintiff asserts an alternative interpretation of the records, he does not address how the records undercut the ALJ's RFC determination.  The Court, therefore, finds that inconsistencies with the objective medical evidence constitutes a second clear and convincing reason for discounting Plaintiff's testimony.

4.   Improvement With Treatment

The ALJ also discounted Plaintiff's subjective claims because the record showed that

23CV432-TWR-BLM

1   Plaintiff's symptoms were stabilized and controlled with treatment.  See AR at 141.  A claimant's

2   improvement with treatment is "an important indicator of the intensity and persistence of ...

3   symptoms." 20 C.F.R. § 416.929(c)(3).  An ALJ may consider whether the claimant had a "fair

4   response" to medication or treatment.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d

5   1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are

6   not disabling for the purpose of determining eligibility for SSI benefits.").  Symptom

7   improvement must be weighed within the context of an "overall diagnostic picture." Holohan v.

8   Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001).  Claims of a lack of improvement may be

9   rejected by pointing to clear and convincing evidence that directly undermines them, such as

10  evidence that a claimant's symptoms improved with the use of medication.  See Morgan v.

11  Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12        In support of his finding, the ALJ discussed the medical opinions of Drs. Ghazi, Kanner,

13  Sin, Abitol, Eves, Creek, Faruque, Morris and noted specific medical records discussed above.

14  AR at 141-142 (citing Exh. B8F at 7; B9F at 5, 11, 15; B10F at 11, 16, 49, 70; B12F at 17-18;

15  B13F at 1, 8, 11; B14F at 5; B15F at 3; B16F; B20F at 1).

16        As an initial matter, Plaintiff alleges disability beginning on March 20, 2020.  AR at 134.

17  Plaintiff cites seventeen medical records in support of his argument that he has not experienced

18  the stability and control with his back and neck pain that the ALJ concludes he has found.  Mot.

19  at 19-20.  The medical records reference Plaintiff's continuing pain even after receiving medical

20  injections.  Id.  All but six of the records cited are dated before Plaintiff's alleged March 20, 2020

21  disability onset date.  Id.  It is well-established that evidence and opinions falling outside of

22  onset disability time frames do not qualify as significant nor probative evidence.  See Carmickle,

23  533 F.3d at 1165 ("[m]edical opinions that predate the alleged onset of disability are of limited

24  relevance.); see also Burkett v. Berryhill, 732 F. App'x 547, 551 (9th Cir. 2018) ("An ALJ is not

25  required to discuss evidence that is not significant or probative. Evidence concerning Burkett's

26  symptoms and limitations outside the alleged period of disability does not qualify as significant

27  or probative.") (citing Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

28  Accordingly, Plaintiff's reliance on medical records from 2019 and early 2020 are not persuasive.

Plaintiff does not address this issue.  Mot.; Reply.  In contrast, thirteen of the fourteen records cited by the ALJ are dated after Plaintiff's alleged disability onset date.  AR at 141-142.   As stated above, these records are substantial evidence in support of the ALJ's decision to reject Plaintiff's subjective symptom testimony.  Additionally, Plaintiff fails to explain how the records he identifies conflict with the ALJ's RFC finding.  The records Plaintiff cites show that Plaintiff reported numerous instances of low back and neck pain, sleep apnea, and heart issues.  Mot. at 19-21.  However, as explained above, these conditions were all recognized by the ALJ and accounted for in his RFC.  The ALJ found that Plaintiff had severe impairments including "degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine, status-post C5-C7 discectomy and fusion; osteoarthritis of the knees; obstructive sleep apnea; and cardiomyopathy, status-post stenting (20 CFR 404.1520(c))."  AR at 137.  The ALJ then accounted for these impairments by limiting Plaintiff's RFC to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting 6-hours, and standing and/or walking for 4-hours in an 8-hour day, using a cane for all ambulation, and no climbing ladders, ropes, or scaffolds, or crawling, stooping, or crouching, occasionally climbing ramps and stairs and balancing; occasionally doing bilateral reaching; and avoiding concentrated exposure to hazards such as work at unprotected heights and around dangerous moving machinery.  Id. at 139.  Plaintiff does not explain how his low back and neck pain, sleep apnea, and heart issues are incompatible with the RFC or why he believes the RFC does not properly account for his impairments.

Plaintiff also argues that the ALJ improperly cherry-picked isolated instances of improvement to support his conclusion that Plaintiff's symptoms are effectively controlled and stabilized with treatment.  Mot. at 19-22; see also Reply at 6-8.  Here, the ALJ did not ignore the fact that Plaintiff was experiencing challenges.  The ALJ specifically noted that Plaintiff only got three weeks of relief from his lumbar epidural injections, had decreased range of motion, head pain that radiated to his neck, and decreased right and left rotation, but found that these challenges were inconsistent with Plaintiff's alleged loss of functionality and that while Plaintiff was impaired, he was not so impaired that he could not return to work.  AR at 141-142.  Plaintiff's limitations were properly reflected in the RFC established by the ALJ via various exertional and

23CV432-TWR-BLM

1   postural restrictions.  Id. at 140-141.

2       Finally, Plaintiff argues that the ALJ failed to consider his sleep apnea which has not

3   improved at all.  Reply at 8.  However, the ALJ discusses Plaintiff's November 5, 2020

4   cardiovascular appointment where Plaintiff denied chest pain, shortness of breath, orthopnea,

5   palpitation, syncope, paroxysmal nocturnal dyspnea, or resting leg pain, a March 23, 2020 ECG

6   reading showing improved ejection fraction, a normal December 14, 2020 arterial duplex scan,

7   and a December 15, 2020 cerebrovascular duplex scan showing carotid artery stenosis

8   improvement all of which the ALJ concluded was inconsistent with disabling sleep apnea.  Id. at

9   142.

10      For the reasons set forth above, the Court finds that the Plaintiff's inconsistent testimony,

11  the objective medical evidence, and Plaintiff's improvement with treatment are clear and

12  convincing reasons supported by substantial evidence for the ALJ to discount Plaintiff's symptom

13  testimony.

14                          **CONCLUSION**

15      For the reasons set forth above, this Court **RECOMMENDS DENYING** Plaintiff's Motion

16  and **AFFIRMING** the decision of the Commissioner.

17      **IT IS HEREBY ORDERED** that any written objections to this Report and

18  Recommendation must be filed with the Court and served on all parties no later than **February**

19  **6, 2024**.  The document should be captioned "Objections to Report and Recommendation."

20      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

21  and served on all parties no later than **February 16, 2024**.  The parties are advised that failure

22  to file objections within the specified time may waive the right to raise those objections on

23  appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v.

24  Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

25      **IT IS SO ORDERED**.

26  Dated:  1/26/2024

27                                  Hon. Barbara L. Major
                                    United States Magistrate Judge

28

30

23CV432-TWR-BLM